W. West Allen, Esq.
Nevada Bar No. 5566
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: wwa@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiff MJL 12, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MJL 12, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MJJ PRODUCTIONS, LLC, a California limited liability company; MJ PUBLISHING TRUST d/b/a MIJAC MUSIC; TRIUMPH INTERNATIONAL, INC., a California corporation; and TRIUMPH INTERNATIONAL, LLC, a California limited liability company,<br><br>Defendants. | Case No. 2:24-cv-00122<br><br>**COMPLAINT FOR DECLARATORY AND OTHER RELIEF** |

For its Complaint against MJJ PRODUCTIONS, LLC ("MJJ"), MJ PUBLISHING TRUST d/b/a MIJAC MUSIC ("Mijac"), TRIUMPH INTERNATIONAL, INC., ("Triumph Inc.") and TRIUMPH INTERNATIONAL, LLC ("Triumph LLC") (all together, the "Defendants"), Plaintiff MJL 12, LLC (hereinafter, "Plaintiff" or "MJ Live") states the following:

**JURISDICTION AND VENUE**

1. This is an action for declaratory and other relief brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, in which Plaintiff seeks a declaratory judgment that its live musical stage and dance show "MJ Live", which pays tribute, through impersonation and dance, to the late entertainer Michael Jackson, does not infringe upon Defendants' federal or state trademark rights or rights of publicity. Accordingly, this Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338,

as it presents questions arising under the Constitution, laws, or treaties of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2. This Court has general and specific personal jurisdiction over the Defendants. The Defendants conduct continuous and systematic business in Nevada, including by directly using in Nevada, or by licensing third parties to use in Nevada, their trademark and other intellectual property rights, including alleged rights in the "MJ" mark, and have purposefully directed infringing activities into Nevada at MJ Live knowing it is located in and will suffer injury and harm in Nevada. Among other things, Defendants, themselves or through third parties, sell tickets to their MJ THE MUSICAL stage show to Nevada residents, have licensed Cirque du Soleil and/or its affiliates to use Defendants' intellectual property in Las Vegas, Nevada in connection with the "Michael Jackson One" show, and use "MJ" and "MJ One" to advertise Defendants' Las Vegas show to Nevada residents and visitors. *See, e.g.*, https://www.michaeljackson.com/michael-jackson-one (last visited Jan. 16, 2024).

3. In addition, the Court may properly exercise personal jurisdiction over each of the Defendants because there is such unity of interest and ownership among and between them with respect to Michael Jackson's intellectual property rights, that their separate corporate personalities no longer exist and the Court's failure to disregard the Defendants' corporate separateness would result in fraud or injustice. In light of the Defendants' substantial contacts with and direction of activities into Nevada and their close association with one another, it is fair for the Court to exercise of personal jurisdiction over each of them, and the Court's exercise of personal jurisdiction over each of them is constitutionally reasonable.

4. This Court is a proper venue for the adjudication of this dispute pursuant to 28 U.S.C. § 1391(c), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

5. Plaintiff MJL 12, LLC (defined above as "Plaintiff" or "MJ Live") is a Nevada limited liability company who, since 2012, has provided live entertainment services in Nevada in the form of a live musical stage show that pays tribute to the late and exceptional entertainer,

Michael Jackson, through song, dance, and impersonation.

6. Defendant MJJ PRODUCTIONS, LLC is a California limited liability company who, upon information and belief, succeeded to certain intellectual property rights of Michael Jackson upon or subsequent to his death on June 25, 2009.

7. Defendant MJ PUBLISHING TRUST d/b/a MIJAC MUSIC is a trust who, upon information and belief, succeeded to certain intellectual property rights of Michael Jackson upon or subsequent to his death on June 25, 2009.

8. Defendant TRIUMPH INTERNATIONAL, INC. is a California corporation who, upon information and belief, succeeded to certain intellectual property rights of Michael Jackson upon or subsequent to his death on June 25, 2009.

9. Defendant TRIUMPH INTERNATIONAL, LLC is a California limited liability company who, upon information and belief, succeeded to certain intellectual property rights of Michael Jackson upon or subsequent to his death on June 25, 2009.

## ALLEGATIONS COMMON TO ALL COUNTS

10. Plaintiff was formed in 2012 for the purpose of writing and producing a first-class stage show that pays tribute to the enormous and irreplaceable talent of Michael Jackson in a manner that gives the audience an experience similar to that of seeing the real Michael Jackson in concert. Since opening night at the Rio Hotel in Las Vegas on June 2, 2012, Plaintiff has performed over 3,600 shows in Las Vegas and over 200 shows in theaters, casinos, and at state fairs located throughout the United States, along with international shows in Mexico, Guatemala, and Tahiti—all in conjunction with its "MJ LIVE" trademark.

11. Over the past eleven and one-half years, through print, social media, radio and television, Plaintiff has spent millions of dollars advertising and promoting its MJ Live show and its "MJ LIVE" trademark in Nevada, the United States, and around the world. Plaintiff estimates that over 2,500,000 audience members, clapping and singing in their seats, jumping to their feet, and dancing in the aisles, have experienced the joy, excitement, and thrill of MJ Live. Plaintiff's originally designed "MJ LIVE" logo work and trademark that dates back since at least 2012 appears as follows:



12. In addition, since June 2012, Plaintiff has owned and operated the <mjliveshow.com> domain name and website where it has used its MJ LIVE trademark in commerce in connection with digital and print advertising promoting its "MJ Live" tribute shows, examples of which appear below:




13. Plaintiff currently performs its MJ Live show Wednesday through Monday evenings in Las Vegas, Nevada, at the world-famous Tropicana Las Vegas, and has recently advertised its plans to perform MJ Live at venues located in California, Florida, Illinois, Ohio, and Wisconsin.

14. As a result of Plaintiff's long use of its MJ LIVE trademark and the millions of dollars Plaintiff has spent advertising MJ Live since 2012, consumers located in Nevada,

throughout the United States, and even the world, have come to associate Plaintiff's "MJ LIVE" trademark with Plaintiff and Plaintiff's MJ Live show.

15. Defendants purport to be the "Co-Executors of the Estate of Michael Jackson along with various entities which own intellectual property associated with the late entertainer." Defendants contend that, "The logo for MJ Live, being used . . . to advertise the show, infringes the Estate's rights under the Lanham Act, 17 U.S.C. §§ 1051 et seq. [sic] [1] and related state law." Defendants further contend that Plaintiff is "prominently using the mark 'MJ'—in a stylized typeface significantly larger than other writing—coupled with pictures of what appears to be Michael Jackson to advertise its show." Defendants claim that while "the person in the pictures is not Michael Jackson", "the average consumer would likely be misled to believe that the picture is Michael Jackson and that the show is associated with the Jackson Estate."

16. Defendants also contend that "the Jackson Estate is the co-producer of the Tony Award-winning Broadway show, 'MJ the Musical' ", that in "August 2023 . . . 'MJ the Musical' embarked on its first leg of its national tour," and that "the logo used for MJ Live is confusingly similar to the logo for 'MJ the Musical.'" The logos for MJ the Musical appear as follows:

 

17. These logos which, upon information and belief, were created long after Plaintiff adopted its MJ LIVE mark and began using it in commerce, appear to borrow the font and "distressed" appearance found in Plaintiff's MJ LIVE logo (as set forth beneath paragraph 11 above) and, as a result, are confusingly similar to Plaintiff's MJ LIVE logo.

18. On July 2, 2019, approximately seven (7) *years* after Plaintiff first began using its

---

[1] The Lanham Act is 15 U.S.C. §§ 1051 *et seq*.

"MJ LIVE" trademark in commerce in connection with its MJ Live tribute shows, Triumph Inc. filed U.S. Trademark Application Serial No. 88497689 with the United States Patent and Trademark Office (the "Application") seeking registration of the "MJ" mark for use in connection with, among other goods and services: "Entertainment services, namely, live and televised performances featuring musical, dance, dramatic, and comedic presentations . . . ." The Application was filed as an "intent to use" application pursuant to Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), meaning that the mark had not yet been used in commerce, but Defendants intended to use it in commerce in the future.

19.     After requesting and receiving no less than five (5) extensions of time to submit a statement of use to the USPTO showing actual use of the MJ mark in commerce, on December 19, 2022, Triumph Inc. filed its statement of use (the "Statement of Use") with the USPTO, identifying its date of first use as "10/00/2010", which under USPTO rules means October 31, 2010. To support its application, Triumph Inc. submitted a "specimen" showing its use of "MJ" in connection with the applied for goods and services. Triumph Inc. described its specimen as: "a print out from Applicant's website [www.michaeljackson.com] featuring a photo of the marquee for the live performances featuring the mark with information about the show and links to purchase tickets." The specimen is dated December 15, 2022, and shows "MJ THE MUSICAL" on a banner and on a sign outside of the Neil Simon theatre in New York City. The Application was approved, based on the representations set forth in the Statement of Use, and on February 28, 2023, the USPTO issued U.S. Trademark Registration Certificate No. 6,991,973 to Triumph Inc. (the '973 Registration").

20.     In addition to alleging infringement of their MJ mark, Defendants also contend that "MJ Live . . . violates the Jackson Estate's rights in Michael Jackson's posthumous name, image, and likeness right (his 'right to publicity')."

21.     Defendants have recently sent cease and desist letters to those venues in California, Florida, Illinois, Ohio, and Wisconsin where Plaintiff intends to perform its MJ Live shows and has, notwithstanding the fact that Plaintiff has been using its MJ Live trademark to perform over 3,600 MJ Live shows throughout the United States since 2012, demanded that Plaintiff and these

venues "cancel the MJ Live performances altogether."

**COUNT I**
**(Declaratory Judgment of Non-Infringement --**
**Lanham Act)**

22. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

23. The Declaratory Judgment Act ("DJA"), provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

24. An actual and substantial controversy exists between Plaintiff and Defendants, who have adverse legal interests, concerning whether Plaintiff's use of its "MJ Live" trademark infringes Defendants' alleged trademark rights in "MJ" under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*

25. Defendants contend that Plaintiff's use of its MJ LIVE trademark infringes upon Defendants' alleged rights in its MJ mark.

26. Plaintiff contends that it has superior rights in its MJ LIVE trademark based upon its prior use of MJ LIVE in commerce, that its MJ LIVE mark is distinctive and has acquired secondary meaning with the consuming public as the source of Plaintiff's MJ Live show, and that no likelihood of confusion exists between Plaintiff's use of MJ LIVE and Defendants' alleged use of MJ.

27. The controversy is ripe for adjudication.

**COUNT II**
**(Declaratory Judgment of Non-Infringement --**
**Rights of Publicity)**

28. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

29. An actual and substantial controversy exists between Plaintiff and Defendant, who have adverse legal interests, concerning whether Plaintiff's use of "MJ Live" infringes Defendant's rights of publicity under State law.

30. Plaintiff contends that it has a First Amendment right of free expression under the Constitutions of the United States and the State of Nevada, as well as a right, pursuant to N.R.S. §

597.790(2)(b), to impersonate Michael Jackson its MJ Live performances.

31. Defendants contend that Plaintiff's performances of MJ Live violate "the Jackson Estate's rights in Michael Jackson's posthumous name, image, and likeness right (his 'right to publicity')."

32. The controversy is ripe for adjudication.

### COUNT III
### (Common Law Trademark Infringement – Against all Defendants)

33. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

34. Plaintiff, by and through its long and continuous use of its MJ LIVE mark in commerce in connection with its performance of MJ Live and by and through the millions of dollars it has expended to advertise and promote its tribute shows under the MJ LIVE mark has developed protectable common law rights in its MJ LIVE mark.  Indeed, Plaintiff's long and continuous use of MJ LIVE in commerce since 2012 in connection with more than 3,600 shows coupled with Plaintiff's extensive advertising and promotion of its MJ Live shows and MJ LIVE mark in Nevada and throughout the United States has caused consumers to uniquely associate Plaintiff and its trademarks with its MJ Live shows.

35. After Plaintiff began using its MJ LIVE mark in commerce, Defendants adopted and began using their "MJ THE MUSICAL" mark in commerce.

36. Defendants' "MJ THE MUSICAL" mark is confusingly similar to Plaintiff's MJ LIVE mark:

| **Plaintiff's mark:** | **Defendants' mark:** |
|---|---|
|  |  |

37. Defendants' unauthorized use of their confusingly similar MJ THE MUSICAL

mark in commerce constitutes infringement at common law of Plaintiff's MJ LIVE mark.

38. As a direct and proximate result of Defendants' infringement of Plaintiff's MJ LIVE mark, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

### COUNT IV
**(Federal Unfair Competition in Violation of the Lanham Act, 15 U.S.C. § 1125(a) -- Against all Defendants)**

39. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

40. Defendants' unauthorized use of their confusingly similar MJ THE MUSICAL mark in commerce in connection with live entertainment and stage shows constitutes a false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between Plaintiff and Defendants, or as to the origin, sponsorship, or approval of Defendants' goods or services by Plaintiff.

41. As a direct and proximate result of Defendants' infringement of Plaintiff's MJ LIVE mark, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

### COUNT V
**(Common Law Unfair Competition – Against all Defendants)**

42. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

43. Defendants' unauthorized use of their confusingly similar MJ THE MUSICAL mark in commerce on or in connection with live entertainment and stage shows constitutes unfair competition under the common law.

44. As a direct and proximate result of Defendants' unfair competition, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

### COUNT VI
**(Cancellation of the '973 Registration – 15 U.S.C. §§ 1119, 1120)**

45. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

46. "In any action involving a registered mark the court may determine the right to

- 9 -

registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

47. Upon information and belief, Defendants obtained the '973 Registration by submitting a false or fraudulent declaration to the USPTO in its Statement of Use filed on December 19, 2022. More specifically, Triumph Inc. declared in its Statement of Use that it had first used the MJ mark in commerce on or in connection with live entertainment and stage shows on October 31, 2010. However, upon information and belief, neither Triumph Inc. nor any of the Defendants had, in fact, made a bona fide use in commerce of the MJ mark on or in connection with live entertainment and stage shows as early as October 31, 2010, when the Statement of Use was filed. Alternatively, upon information and belief, neither Triumph Inc. nor any of the Defendants had, in fact, made a bona fide use in commerce of the MJ mark on or in connection with one or more of the other goods and services listed in the Statement of Use as early as October 31, 2010, when the Statement of Use was filed.

48. Upon information and belief, Defendants' first use of the "MJ" mark in commerce in connection with live entertainment and stage shows did not occur as early as October 31, 2010, as stated in the Application.

49. Upon information and belief, Defendants did not begin to use the "MJ" mark in commerce in connection with live entertainment and stage shows until advertising and promotional activities for MJ The Musical began in 2019 or 2020.

50. Triumph Inc.'s false representations were material to the registrability of the MJ mark.

51. Upon information and belief, Triumph Inc. knew that its representation concerning its date of first use of the MJ mark on or in connection with live entertainment and stage shows as early as October 31, 2010 was false when it was made.

52. Upon information and belief, Triumph Inc. made this false representation with the intent of deceiving the USPTO so that it could obtain a federal trademark registration for the MJ mark.

53. Plaintiff has been injured as a direct and proximate result of Defendants' fraud in obtaining the '973 Registration.

54. Pursuant to 15 U.S.C. § 1120, Plaintiff is entitled to an award of damages to compensate it for the injuries it has suffered as a result of Defendants' false or fraudulent procurement of the '973 Registration.

**COUNT VI**
**(Interference with Existing and/or Prospective Economic Advantage –**
**Against all Defendants)**

55. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

56. Defendants have learned of Plaintiff's plans to perform MJ Live in 2024 at each of the following venues:

- The Pechanga Resort Casino in Temecula, California;
- The Peabody Auditorium in Daytona Beach, Florida;
- The Broward Center for the Performing Arts in Fort Lauderdale, Florida;
- The Barbara B. Mann Performing Arts Halls at Florida Southwestern State College in Fort Myers, Florida;
- The Rosemont Theatre in Rosemont, Illinois;
- The Niswonger Performing Arts Center of Northwest Ohio in Van Wert, Ohio; and
- The Grand Theater in Wausau, Wisconsin.

57. In each instance, Plaintiff has either entered into a contract to perform MJ Live at the venue or is poised to imminently do so.

58. Since learning of the shows, and notwithstanding the fact that Plaintiff has been performing shows since 2012 in 32 U.S. States and in three different countries, Defendants have recently sent cease and desist letters to each venue, accusing Plaintiff of infringing their alleged trademark rights in the "MJ" mark, accusing Plaintiff of infringing their alleged rights of publicity in the name, image, and likeness of Michael Jackson, and demanding that each of the shows be cancelled.

59. Each of these proposed MJ Live shows has resulted in either an existing contract between the venue and Plaintiff to perform the show or presents the prospect of a contract

between the venue and Plaintiff for the performance of MJ Live.

60. At all relevant times, Defendants have intended to harm Plaintiff by interfering with and otherwise disrupting Plaintiff's performance of these contracts or, in the case of prospective contracts for the performance of MJ Live, by preventing Plaintiff from entering into them.

61. At all relevant times, Defendants' acted without privilege or justification.

62. As the direct and proximate result of Defendants' intentional and wrongful interference with Plaintiff's contracts and prospective contracts, Plaintiff has suffered and will continue to suffer actual and irreparable harm and damage to its business, reputation, and goodwill, which may only partially be compensated for by an award of money damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

A. Entry of a preliminary and/or permanent injunction prohibiting Defendants from interfering with Plaintiff's existing and prospective contracts to perform MJ Live;

B. Entry of an order granting Plaintiff a speedy hearing on its request for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure;

C. Entry of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 *et seq.* declaring:

   i. That Plaintiff's use of its "MJ Live" trademark does not infringe upon any rights of Defendant under the Lanham Act, 15 U.S.C. §§ 1051 *eq seq.*;

   ii. That Plaintiff's use of its "MJ Live" trademark, alone or in conjunction with any other image or mark, does not infringe upon any rights of publicity belonging to Defendants under Nevada law; and

   iii. That Plaintiff's use of its "MJ Live" trademark, alone or in conjunction with any other image or mark, does not infringe upon any rights of publicity belonging to Defendant under the laws of any other State;

D. Entry of an order directing the United States Patent and Trademark Office to cancel the '973 Registration; and

E. Entry of an order awarding Plaintiff money damages and all such other, further,

and different relief that the Court deems just and proper.

DATED: this 17th day of January 2024.

        Respectfully submitted,

        **HOWARD & HOWARD ATTORNEYS PLLC**

        By:     /s/ Jonathan W. Fountain
        W. West Allen, Esq.
        Nevada Bar No. 5566
        Jonathan W. Fountain, Esq.
        Nevada Bar No. 10351
        3800 Howard Hughes Parkway, Ste. 1000
        Las Vegas, Nevada 89169
        Telephone: (702) 257-1483

        *Attorneys for Plaintiff MJL 12, LLC*