UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MJL 12, LLC,<br><br>                    Plaintiff,<br>vs.<br><br>MJJ PRODUCTIONS, LLC, *et al.*,<br><br>                    Defendants. | Case No.: 2:24-cv-00122-GMN-EJY<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART** |

Pending before the Court is a Motion to Dismiss, (ECF No. 29), filed by Defendant Triumph International, LLC.  Plaintiff MJL 12, LLC, filed a Response, (ECF No. 34), to which the Defendant filed a Reply, (ECF No. 36).

For the reasons discussed below, the Court **GRANTS, in part, and DENIES, in part,** the Motion to Dismiss.

**I.       BACKGROUND**

This case arises out of a dispute over whether Plaintiff musical dance show "MJ Live," infringes on Defendant Triumph's trademark rights or rights of publicity as to Michael Jackson. (*See generally* First Am. Compl. ("FAC"), ECF No. 25).  Plaintiff MJL was formed to write and produce a stage show paying tribute to Michael Jackson. (*Id.* ¶ 7).  Plaintiff designed the MJ LIVE logo and trademark in 2012, and it has since been registered with the United States Copyright Office with an effective registration date of January 15, 2024. (*Id.* ¶ 10).  Plaintiff has also owned and operated the <mjliveshow.com> domain where it has used its MJ LIVE trademark in commerce and advertising to promote its tribute shows. (*Id.* ¶ 11).

Defendant Triumph is part of the Michael Jackson Estate that has held trademarks and related rights associated with him. (*Id.* ¶ 14).  In August 2021, Defendant's affiliates sent Plaintiff a cease-and-desist letter alleging that the videos posted by Plaintiff included music

owned by the Jackson Estate, and that Plaintiff was using the mark "MJ" coupled with pictures appearing to be Michael Jackson, to advertise the show. (*Id.* ¶ 15).  Plaintiff responded by removing music owned by the Estate from the videos but did not stop using its MJ LIVE mark or logo. (*Id.* ¶ 16).

In January 2024, Defendant sent cease-and-desist letters to Plaintiff and the owners of seven out-of-state venues where Plaintiff would be performing in the upcoming months. (*Id.* ¶ 17).  The letters claimed that the logo for MJ LIVE infringes the Estate's rights under the Lanham Act and related state law. (*Id.*).  The letter also stated that the MJ LIVE logo was confusingly similar to the Broadway show "MJ the Musical's" logo, which is co-produced by the Jackson Estate. (*Id.* ¶ 18).  Plaintiff alleges, however, that the logos for MJ the Musical were created long after it adopted its MJ LIVE mark and logo, appear to use a similar font and distressed appearance, and are thus confusingly similar to Plaintiff's MJ LIVE mark and substantially similar to Plaintiff's logo. (*Id.* ¶ 19).  The letter also claimed that MJ Live violates the Jackson Estate's right to publicity and demanded that Plaintiff and the venues it contracted with "cancel the MJ Live performances altogether." (*Id.* ¶¶ 20–21).  As a result of the 2024 letters, neither Plaintiff nor the venue operators proceeded with the planned MJ Live shows. (*Id.* ¶ 22).

In its FAC, Plaintiffs bring seven claims against Defendant: (1) Declaratory Judgment of Non-Infringement under the Lanham Act, (2) Declaratory Judgment of Non-Infringement of Rights of Publicity, (3) Common Law Trademark Infringement, (4) Federal Unfair Competition in Violation of the Lanham Act, (5) Common Law Unfair Competition, (6) Copyright Infringement, and (7) Cancellation of the '973 Registration. (*Id.* ¶¶ 23–66).  Defendant moves to dismiss Plaintiff's second, sixth, and seventh claims for relief. (Mot. Dismiss 1:1–4, ECF No. 29).

## II. LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

Defendant argues that Plaintiff's second, sixth, and seventh claims fail as a matter of law. (Mot. Dismiss 5:21).[1] The Court begins with Plaintiff's claim for copyright infringement as alleged in Count VI of the FAC.

### A. Copyright Infringement – Count VI

Defendant moves to dismiss Plaintiff's copyright infringement claim on the grounds that Plaintiff's copyright protection is "exceedingly thin" and entitled to limited protection, and because the parties' logos are not substantially similar as a matter of law. (*Id.* 7:1–4). To state a copyright infringement claim, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural*

---

[1] The FAC brings seven claims, but mistakenly labels the last two claims as both Count VI. For purposes of this Order, the Court will refer to the second Count VI as Count VII: Cancellation of the '973 Registration.

*Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).  Without direct evidence of copying, "a plaintiff may prove this element through circumstantial evidence that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity of the general ideas and expression between the copyrighted work and the defendant's work." *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 984–85 (9th Cir. 2017).  For the logos to be substantially similar, they must be similar under both the "intrinsic test" and the "extrinsic test." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018).  Courts apply only the extrinsic test at the motion to dismiss stage. *Id.*  "The extrinsic test assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Id.*

### 1. Step One: Identify Protectable Elements

Step one of the extrinsic test is to identify and "filter out" the unprotectable elements of Plaintiff's logo. *See id.*  "The protectable elements that remain are then compared to corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Id.*  The "unprotectable elements" of Plaintiff's work are "primarily ideas and concepts, material in the public domain, and scènes à faire (stock or standard features that are commonly associated with the treatment of a given subject)." *Id.*  "Words and short phrases such as names, titles, and slogans; familiar symbols or designs; [and] mere variations of typographic ornamentation, lettering or coloring" are "not subject to copyright." 37 C.F.R. § 202.1(a).  Copyright law protects expression of ideas, not the ideas themselves. 17 U.S.C. § 102(b).  Removing the unprotectable elements, the protectable elements of Plaintiff's logo include the arrangement of the elements such as the distressed "MJ" white letters in a black square above the "LIVE" word in black capital letters on a white background. *See Rentmeester*, 883 F.3d at 1119–20.  But the words "MJ" and "LIVE," and their fonts and coloring, are not protectable.

Next, "[b]efore analyzing substantial similarity," the court "determine[s] whether a copyright is entitled to 'thin' or 'broad' protection." *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1260 (9th Cir. 2021). The level of similarity required to find "substantial similarity" differs depending on the "breadth of possible expression" of the underlying ideas. *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010). "If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is 'broad'" and a lower level of similarity is required. *Id.* "If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on a blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe." *Id.* at 914.

The *Rentmeester* court explained that photographs, unlike novels, plays, and motion pictures, cannot be dissected into protected and unprotected elements in the same way. *Rentmeester*, 883 F.3d at 1119–20. Elements such as subject matter, pose, lighting, and camera angle are not subject to protection when viewed in isolation, however, the selection and arrangement of the photo's otherwise unprotected elements is protectable if sufficiently original. *Id.* at 1119. The court explained that when "only a narrow range of expression is possible, copyright protection is thin because the copyrighted work will contain few protectable features." *Id.* at 1120.

Cases discussed by the parties provide helpful examples as to when an image is entitled to thin or broad protection. Another court in this district found that a logo consisting of two everyday objects, a record and a milk crate, would be entitled to thin protection, even though certain design choices such as the arrangement of the two items, their coloring, and their shading, were protectable creative expression. *Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, 619 F. Supp. 3d 1009, 1018 (C.D. Cal. 2022). And in *Ets-Hokin v. Skyy Spirits, Inc.*, the Ninth Circuit held that a plaintiff's commercial photograph of a vodka bottle was only entitled to thin

protection because it was constrained by the subject matter and commercial product image conventions, so there were relatively few creative choices that a photographer could make. 323 F.3d 763, 766 (9th Cir. 2003); *see also Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (holding that a glass-in-glass jellyfish sculpture was entitled to thin protection because the plaintiff's quantum of originality, such as distinctive tendril curls, arrangement of hues, and shape of jellyfish bells, was "trivial").  These examples stand in contrast to *Rentmeester*, in which the Ninth Circuit found that a photograph of a basketball player dunking a basketball was entitled to broad protection because the plaintiff had a broad range of creative choices when producing the photo and "very few of the choices were dictated by convention or subject matter." 883 F.3d at 1120.

While Plaintiff's logo does contain certain design choices, such as the arrangement of words "MJ" and "LIVE," their backgrounds, and distressed style, the Court finds that the logo is entitled to only thin protection.  As described above, Plaintiff's logo contains few protectable features when the non-protectable elements are removed, and there is a "narrow range of expression" for those elements that would make sense when read from left to right or top to bottom.  Plaintiff therefore possesses a "thin" copyright that protects against virtually identical copying. *See Ets–Hokin*, 323 F.3d at 766 ("When we apply the limiting doctrines, subtracting the unoriginal elements, [the plaintiff] is left with . . . a 'thin' copyright, which protects against only virtually identical copying.").

**2.  Step Two: Similarity Comparison**

Step two of the extrinsic test is to compare the protectable elements to the corresponding elements in the allegedly infringing works. *Rentmeester*, 883 F.3d at 1118.  Because the Court has determined that Plaintiff's logo is entitled to thin protection, it now considers whether the protectable elements in Plaintiff's logo are "virtually identical" to those in Defendant's logo. Comparing the protectable elements of the two logos side by side, the Court does not find them

to be virtually identical.  Defendant's logo for MJ The Musical consists of a bright red rectangle framing a centered distressed smaller black rectangle, while Plaintiff's logo is square with a black background and overlayed with a smaller white rectangle in the bottom third.  The white rectangle is not distressed, nor is it centered on the background.  And while both images contain distress marks in the wording, the distressing does not match in its style or placement.  The Court finds that these differences make the logos not "virtually identical," so Plaintiff has failed to allege the second element of its copyright claim. *See Cub Club Inv., LLC v. Apple Inc.*, 2022 WL 469378, at *1 (N.D. Cal. Feb. 16, 2022) (finding that the defendant's emoji design was not virtually identical to the plaintiff's due to differences in "coloring," "shape," use of "shadows," and shading).

Plaintiff requests that if the Court is inclined to dismiss the claim, that it do so without prejudice so that Plaintiff may file a motion to amend after conducting discovery on other versions of Defendant's logo, if warranted. (Resp. 17:22–18:7).  The Court thus GRANTS the Motion to Dismiss as to Count VI of the FAC and DISMISSES Plaintiff's copyright infringement claim but does so without prejudice.

**B. Cancellation of the '973 Registration – Count VII**

Defendant also moves to dismiss Plaintiff's claim for Cancellation of the '973 Registration as alleged in Count VII of the FAC.  The USPTO issued the '973 Registration to Defendant in 2023. (FAC ¶ 57).  Defendant argues that Plaintiff's claim for cancellation is a fraud claim premised on an allegedly incorrect first use date, but that Defendant's first use preceded the application's filing date and thus Plaintiff's claim fails as a matter of law. (Mot. Dismiss 11:6–23).  Plaintiff responds that the FAC does not contain a claim for cancellation based on fraud, but rather asserts a claim based on prior rights in its MJ LIVE mark. (Resp. 18:12–14).  Plaintiff alleges that it is the senior user, and Defendant's MJ mark is likely to cause confusion, mistake, or deceive consumers. (*Id.* 19:10–14) (citing FAC ¶¶ 60–61, 65–66).

Plaintiff further alleges that Defendant filed the trademark application after Plaintiff first began using its "MJ LIVE" trademark and logo in connection with its MJ Live shows, and whether Defendant provided an inaccurate first use date is relevant to establishing priority of use. (*Id.* 19:14–20).

The first to use a mark is deemed the "senior" user and has the right to enjoin "junior" users from using confusingly similar marks in the same industry and market. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). "It is axiomatic in trademark law that the standard test of ownership is priority of use." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Id.* Because Plaintiff alleges it is the senior user, and that Defendant filed its application on July 2, 2019, with an inaccurate date of first use and for services related to Plaintiff's, the Court finds that Plaintiff's claim is sufficiently pled as a prior rights claim, not a fraud claim. (FAC ¶¶ 60–65). The Court therefore DENIES Defendant's Motion to Dismiss Count VII of the FAC.

**C.  Declaratory Judgment of Non-Infringement of Right of Publicity – Count II**

Plaintiff's declaratory judgment claim in Count II of its FAC is premised on seven cease-and-desist letters that it received from Defendant. In January 2024, Defendant sent Plaintiff and the owners of seven venues located in California, Florida, Illinois, Ohio, and Wisconsin, letters claiming that the MJ Live Logo infringes Defendant's rights under the Lanham Act "and related state law." (*Id.* ¶ 17). The letters claimed that MJ Live "violates the Jackson Estate's rights in Michael Jackson's posthumous name, image, and likeness right (his 'right to publicity')." (*Id.* ¶ 20). The letters demanded that Plaintiff and the venues outside of Nevada cancel the MJ Live performances, so none of the shows outside of Nevada have occurred. (*Id.* ¶¶ 21–22). Plaintiff now asserts that it has a First Amendment right of free

expression and a right to perform its shows pursuant to the statutes of each state, including Nevada. (*Id.* ¶¶ 29–33).

Defendant first moves to dismiss Plaintiff's claim brought under Nevada law specifically. It argues that Plaintiff failed to allege that Defendant demanded a Nevada venue cancel a performance on right-of-publicity grounds, or that the letters asserted that Plaintiff violated Nevada's right-of-publicity law. (Mot. Dismiss 15:21–26). Defendant contends that because it never demanded cancellation of a performance in a Nevada venue, and has no plans to do so, Plaintiff's claim for declaratory judgment is not ripe. (*Id.* 16:8–14). Plaintiff responds that the letters were sent to Plaintiff at its address in Nevada, where it regularly performs MJ Live, that the allegations of infringement were against both the venues and Plaintiff, and that six of the seven letters were silent as to what state's law gives rise to the Estate's purported rights of publicity. (Resp. 20:9–22).

Courts determine whether a declaratory judgment claim is ripe by evaluating "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). A primary concern as the ripeness question is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Richardson v. City & County of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) (quotations omitted).

The Court finds that Plaintiff has failed to allege a "substantial controversy" as to their right of publicity to Nevada shows. Although the cease-and-desist letters were sent to Plaintiff, as well as to the out-of-state venues, the letters demanded only that the out-of-state venues cancel the MJ Live performances. (FAC ¶¶ 21–22). The letters did not allege violations of Nevada's right of publicity law, and Plaintiff does not allege that Nevada shows have been

cancelled or threatened. Thus, the Court cannot issue a declaratory judgment about Plaintiff's Nevada shows because Defendant did not demand that they be cancelled. Defendant also asserts that it has "no plans to assert a violation of Nevada's publicity statute," which implicates the Court's concern that a cancellation of Nevada shows may not occur at all. (*See* Mot. Dismiss 16:8–10). The Court thus GRANTS the Motion to Dismiss as to Count II, Plaintiff's declaratory judgment claim as applied to its Nevada shows, with leave to amend.

Defendant further moves the Court to decline jurisdiction over Plaintiff's rights of publicity claim entirely, "to avoid the needless determination of state law issues that are distinct from those in the remainder of the FAC." (*Id.* 16:17–20). Citing *Brillhart v. Excess Ins. Co. of America*, it argues that all three factors favor dismissal. (*Id.* 17:15–20:21).

The *Brillhart* doctrine rests on concerns about judicial economy and cooperative federalism. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). With those concerns in mind, district courts consider three primary factors when evaluating whether to abstain from hearing a case: (1) avoidance of needless determination of state law issues; (2) discouragement of the use of declaratory actions as a means of forum shopping; and (3) avoidance of duplicative litigation. *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998). In general, however, "when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *Id.* at 1225; *see also Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361 (9th Cir. 1991).

Because that is the case here, where monetary claims for relief are joined with claims for declaratory relief, the Court will exercise its jurisdiction over Plaintiff's right of publicity declaratory judgment claim. Although the right of publicity claim is purely an issue of state law, the Court does not find evidence of forum shopping or duplicative litigation. Therefore,

although Plaintiff's claim is dismissed to the extent it is brought under Nevada law, the Court will exercise its discretion to retain jurisdiction over the claim brought under other states' laws in the spirit of judicial economy.

## V.  CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss, (ECF No. 29), is **GRANTED, in part, and DENIED, in part.** Plaintiff's claim for copyright infringement as alleged in Count VI is dismissed without prejudice, and its claim for declaratory judgment brought under Nevada's right to publicity law in Count II of the FAC is dismissed with leave to amend. Defendant's Motion to Dismiss Count VII Cancellation of Registration is denied.

**IT IS FURTHER ORDERED** that Plaintiff may have 21 days from the date of this Order to file an amended complaint.

**DATED** this __3__ day of January, 2025.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT